```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PATRICK V. PALMER, individually
and derivatively on behalf of all
shareholders of Freefone, Inc.,

                Plaintiff,              OPINION

        -against-                       07 Civ. 038 (MGC)

GLOBALIVE COMMUNICATIONS CORP.,
ANTHONY LACAVERA, MARK RIDER,
DAVID PARKES, and RICHARD LANGER,

                Defendants.

------------------------------------X

APPEARANCES:

        HANTMAN & ASSOCIATES
        Attorneys for Plaintiff
        1414 Avenue of the Americas
        Suite 406
        New York, New York 10019

        By: Robert J. Hantman, Esq.


        HOWREY LLP
        Attorneys for Defendants
        Globalive, Lacavera, and Rider
        Citigroup Center
        153 East 53rd Street, 54th Floor
        New York, New York 10022

        By: Kevin A. Burke, Esq.


        MARK S. FREY
        Attorney for Defendant Langer
        119 Fifth Avenue
        Third Floor
        New York, New York 10003

        By: Mark S. Frey, Esq.
```

1

**Cedarbaum, J.**

Patrick V. Palmer, inventor of "Freefone," filed this action against Globalive Communications Corp. ("Globalive"), Anthony Lacavera, Mark Rider, David Parkes, and Richard Langer for the following claims arising out of defendants' conduct with respect to Palmer's role in and relationship with Freefone, Inc.: (1) declaratory relief for fraudulent misappropriation of the Freefone trademark (against Globalive, Lacavera, Rider, and Parkes), (2) misuse of the Freefone trademark in violation of the Lanham Act, 15 U.S.C. § 1051, et seq., (against Globalive, Lacavera, Rider, and Parkes), (3) fraudulent inducement of contract (against Globalive, Lacavera, and Rider), (4) knowingly participating in fraudulent inducement of contract (against Langer), (5) fraudulent inducement of the trademark assignment (against Globalive, Lacavera, Rider, and Parkes), (6) conversion (against Globalive, Lacavera, Rider, and Parkes), (7) tortious interference with an employment contract (against Globalive, Lacavera, Rider, and Parkes), (8) breach of a shareholders' agreement (against Globalive, Lacavera, Rider, and Parkes), and (9) prima facie tort (against all defendants). Palmer is a resident of Texas. Globalive and Freefone, Inc. are Canadian entities. Lacavera, Rider, and Parkes are all residents of Canada. Only Langer is a resident of New York.

Palmer has withdrawn all derivative and minority shareholder claims against defendants. The claims against Rider, a shareholder of Globalive, have been dismissed for lack of personal jurisdiction. Parkes, former President and CEO of Freefone, Inc., was never properly served with a complaint. Palmer was given one week from May 28, 2008 to make a final attempt to have process served on Parkes. No such proof has been proffered. Accordingly, the claims against Parkes are dismissed without prejudice.

Globalive and Lacavera, CEO of Globalive, move to dismiss claims one and two pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction; claims three, five through seven, and nine pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted; and all claims on the ground of <u>forum non conveniens</u>. Lacavera moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. At oral argument on May 28, 2008, the motion to dismiss claims three, five, seven, and nine was denied, as was the <u>forum non conveniens</u> motion. The motion to dismiss claim six was granted.

For the reasons set forth below, the motion to dismiss claims one and two for lack of subject matter jurisdiction is denied. With respect to personal jurisdiction over Lacavera, an evidentiary hearing was held on October 24, 2007. Lacavera's

motion to dismiss for lack of personal jurisdiction is granted because Palmer has not shown by a fair preponderance of the credible evidence that Lacavera has sufficient contacts with New York to permit the exercise of jurisdiction over him.

BACKGROUND

The following relevant facts were established through the testimony of Palmer, Lacavera, and Langer at the evidentiary hearing. In 1996-97 Palmer invented Freefone, a free public courtesy telephone system that would derive revenue from advertisements. By 2003, Palmer had developed an internet-based system of delivering advertisements through Freefone. In the summer of 2003, while Palmer was considering outside investors for Freefone, Langer, who works in the telecommunications industry, put Palmer in touch with Lacavera. Palmer and Lacavera discussed a proposed investment in Freefone by Globalive, by which Globalive would provide financing and other resources to help launch the Freefone product. These discussions were conducted primarily by telephone and email. Lacavera also visited Palmer in Texas that summer to view the Freefone product and discuss the investment.

The proposed terms of this relationship were memorialized in a letter of intent dated July 18, 2003. Palmer testified

credibly that he met with Lacavera in New York in July to review and sign the letter of intent.  According to Palmer, the parties reviewed the previously negotiated terms, which were already "final," and then signed the letter.  Palmer testified credibly that at the meeting Lacavera told him that Palmer would have "an active role in the company" and that they would need Palmer's "knowledge about the product, feedback, [and] development."

In a sworn declaration dated March 27, 2007, Lacavera stated that "[a]round July 2003" he met with Palmer in New York, where they "executed" the letter of intent.  Lacavera testified at the evidentiary hearing, however, that the meeting in New York actually took place in late August, and that the letter of intent must have been signed in Toronto on July 18 prior to that meeting, or that it may have been re-signed at that meeting.  His testimony regarding where the letter of intent was signed was not credible.  Nonetheless, while Palmer and Lacavera disagree as to where the letter of intent was officially signed, both agree that the letter was finalized prior to the New York meeting, and that it was negotiated between the parties by email and telephone while both parties were outside of New York.  They also agree that a meeting in New York regarding Freefone did take place. The parties later signed a shareholders' agreement in Toronto and incorporated Freefone, Inc. in Ontario, Canada on September 15, 2003.

At the hearing, Langer testified about his role in introducing Palmer to Lacavera, and his subsequent involvement with the Freefone product. He testified that he met with Lacavera a number of times in New York in regard to various business opportunities, including Freefone. Langer received 500,000 shares of stock in Freefone, Inc. as a finder's fee for introducing Palmer to Lacavera.

According to the amended complaint, Palmer received 4,500,000 shares, or 45% of the company's shares. Palmer transferred 565,000 shares to Parkes in exchange for a three-year employment contract, effective January 1, 2004, leaving Palmer with 3,935,000 shares, or 39% of the company's shares. Around May of 2004, Palmer assigned his rights in the Freefone mark, U.S. Registration No. 2,578,929, to Freefone, Inc. Palmer alleges that, after the transfer of the trademark, Globalive, Lacavera, Rider, and Parkes took a number of steps to freeze him out of the company, including various board actions without notice to him, an attempt to remove him as a director of Freefone, Inc., the termination of his employment contract, and the ultimate absorption of Freefone, Inc. into Globalive. Based on these grievances, Palmer sues Globalive and Lacavera for the claims noted above.

DISCUSSION

I. Subject Matter Jurisdiction

Globalive and Lacavera move to dismiss claims one and two pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Although claims one and two invoke the Lanham Act, there is complete diversity of citizenship in this case. Accordingly, the motion to dismiss for lack of subject matter jurisdiction is denied. See 28 U.S.C. § 1332.

II. Personal Jurisdiction over Lacavera

At an evidentiary hearing before trial, plaintiff bears the burden of proving personal jurisdiction by a fair preponderance of the credible evidence. Wilhelmshaven Acquisition Corp. v. Asher, 810 F. Supp. 108, 111 (S.D.N.Y. 1993). Whether there is personal jurisdiction over Lacavera is a matter of New York law. Id. If jurisdiction under New York law is established, a due process analysis under the Fourteenth Amendment is required. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007). At the evidentiary hearing, Palmer attempted to prove general personal jurisdiction over Lacavera under N.Y. C.P.L.R. § 301 for "doing business" in New York, and specific jurisdiction arising from the meeting in New York and signing of the letter of intent under New York's long-arm statute, N.Y. C.P.L.R. § 302(a).

7

A. Doing Business

N.Y. C.P.L.R. § 301 incorporates New York's common law as to general jurisdiction: "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Though general jurisdiction is usually reserved for companies, individuals have also been found to be "doing business" for purposes of N.Y. C.P.L.R. § 301. ABKCO Industries, Inc. v. Lennon, 52 A.D.2d 435, 440 (1st Dep't 1976) (finding § 301 jurisdiction based on the composing activities of Richard Starkey, also known as Ringo Starr). See also Laufer v. Ostrow, 55 N.Y.2d 305, 313 (1982) (assuming without deciding that such a basis for jurisdiction would be proper); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (same). "[W]here jurisdiction over an individual is obtained independent of CPLR 302 because the individual was 'doing business' in New York, jurisdiction will also attach with respect to causes of action which did not arise in New York." ABKCO, 52 A.D.2d at 440. To find general personal jurisdiction over an individual, the individual's business conduct must have been for himself and not for a corporate entity. Laufer, 55 N.Y.2d at 313; Lancaster v. Colonial Motor Freight Line, Inc., 177 A.D.2d 152, 159 (1st Dep't 1992); Brinkmann v. Adrian Carriers, Inc., 29 A.D.3d 615, 617 (2d Dep't 2006) ("An individual cannot be subject to

jurisdiction under CPLR 301 unless he is doing business in New York as an individual rather than on behalf of a corporation.") (citation omitted).  But see Nilsa B. v. Clyde Blackwell H., 84 A.D.2d 295, 306 (2d Dep't 1981) (questioning the basis of the New York Appellate Division, First Department's decision in ABKCO).

"A [defendant] is amenable to suit in New York ... under CPLR 301 if it has engaged in such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in this jurisdiction is warranted ....  The test for 'doing business' is a 'simple [and] pragmatic one,' which varies in its application depending on the particular facts of each case ....  The court must be able to say from the facts that the [defendant] is 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity.'"  Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33-34 (1990) (citations omitted) (second alteration in original).

Palmer argues that Lacavera is subject to general jurisdiction for doing business in New York because he is in New York frequently on business and serves on corporate boards in New York.  Through Lacavera's testimony at the evidentiary hearing, Palmer has established that Lacavera is in New York every two or three months on business and that, in addition to doing business in New York as CEO of Globalive, he serves as a director of Cohere Communications, a New York-based company.  Lacavera is a

member of a residence club that owns property in New York. He sometimes attends business conferences in New York, and occasionally he makes personal investments in companies that he comes in contact with in his role as CEO of Globalive.

These contacts are insufficient to establish general personal jurisdiction over Lacavera. Palmer fails to present any evidence that Lacavera was ever doing business in New York individually on a continuous and systematic basis rather than on behalf of corporate entities. Lacavera testified that his business trips to New York, estimated to occur once every two or three months, were made on behalf of Globalive. Lacavera testified that occasionally he makes personal investments in companies brought to his attention in his role as CEO of Globalive. His investment in Freefone, Inc. is the only instance of such a personal investment elicited through testimony at the evidentiary hearing. Lacavera's membership in a residence club that owns property in New York that he occasionally may occupy is irrelevant because it does not show that he does business in New York continuously on an individual basis. Langer's testimony also does not help to establish § 301 general jurisdiction because it does not show that Lacavera engaged in continuous and systematic activity in his individual capacity, as distinguished from his capacity as CEO of Globalive.

Based on the evidence presented by Palmer, Lacavera's primary activity in New York every two or three months was on behalf of corporations, and his personal investment activity in New York was not continuous and systematic. Therefore, there is no "fair measure of permanence and continuity" sufficient to establish personal jurisdiction under N.Y. C.P.L.R. § 301. Landoil, 77 N.Y.2d at 34.

B. Long-Arm Jurisdiction

New York's long-arm statute, N.Y. C.P.L.R. § 302, provides that:

> "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>     (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
>     (ii) expects or should reasonably expect the act to have consequences in the

> state and derives substantial revenue from
> interstate or international commerce; or
>
> 4. owns, uses or possesses any real property
> situated within the state.

N.Y. C.P.L.R. § 302(a).  Plaintiff is required to establish personal jurisdiction over the defendant as to each claim asserted.  Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004).  Palmer argues that jurisdiction is available over Lacavera under either § 302(a)(1), for a transaction of business in New York, or under § 302(a)(2), for the commission of a tortious act in New York.  Even accepting all of Palmer's testimony as true, he has failed to prove by a fair preponderance of the credible evidence that his claims against Lacavera arise from the meeting in New York.

### 1. Transaction of Business

For jurisdiction under § 302(a)(1), Palmer must show that Lacavera transacted business in New York and that the claims arise from, have an "articulable nexus" with, or are "substantially related to" the transaction.  Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citations omitted).  To establish minimum contacts with New York to sustain jurisdiction over a transaction of business, "the overriding criterion" is "some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within [New York]."  McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382 (1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  Such a determination is based on the totality of the circumstances, and courts often look to:

> (i) whether the defendant has an on-going
> contractual relationship with a New York
> corporation; (ii) whether the contract was
> negotiated or executed in New York, and
> whether, after executing a contract with a
> New York business, the defendant has visited
> New York for the purpose of meeting with
> parties to the contract regarding the
> relationship; (iii) what the choice of law
> clause is in any such contract; and (iv)
> whether the contract requires [the defendant]
> to send notices and payments into [New York]
> or subjects [him] to supervision by [a]
> corporation in [New York].

Credit Suisse Sec. (USA) LLC v. Hilliard, 469 F. Supp. 2d 103, 108 (S.D.N.Y. 2007) (quoting Agency Rent A Car Sys., Inc. v.

Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)). "Contract negotiations in New York will satisfy [the § 302(a)(1)] standard if the discussions 'substantially advanced' or were 'essential to' the formation of the contract or advanced the business relationship to a more solid level." ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termoplastici S.P.A., 775 F. Supp. 650, 655 (S.D.N.Y. 1991) (citations omitted); accord CAVU Releasing, LLC v. Fries, 419 F. Supp. 2d 388, 393 (S.D.N.Y. 2005). "[P]hysical presence alone cannot talismanically transform any and all business dealings into business transactions under CPLR 302." Presidential Realty Corp. v. Michael Square West, Ltd., 44 N.Y.2d 672, 673 (1978) (citations omitted); accord McGowan v. Smith, 52 N.Y.2d 268, 272 (1981).

Neither Globalive nor Freefone, Inc. is a New York corporation. There is no New York choice of law provision in any relevant contract between the parties, and the agreements do not require any payments into New York or supervision by a New York corporation. The only activity of Lacavera in relation to both Palmer and Freefone that may have occurred in New York was one meeting with Palmer where both parties signed a letter of intent which was negotiated outside of New York. There were no subsequent meetings between the parties in New York.

Palmer argues that the letter of intent was an important step in the eventual formation of the shareholders' agreement and the formation of Freefone, Inc., and that the letter memorialized the "key terms" of the parties' eventual agreement. Lacavera argues that the signing of the letter does not constitute a transaction under § 302(a)(1), that the shareholders' agreement was substantially different from the letter of intent, and that Palmer's claims do not arise from the non-binding letter.

I believe Palmer's testimony that the letter of intent was signed in New York on July 18, 2003. But that finding is not sufficient to establish personal jurisdiction over Lacavera. A binding contract entered into in New York may be enough to sustain personal jurisdiction, George Reiner & Co. v. Schwartz, 41 N.Y.2d 648, 653 (1977), but the letter of intent was not binding. Aside from the confidentiality and non-solicitation provisions, the letter of intent specified that it "is not intended to create contractual obligations." This type of letter agreement clearly falls outside the scope of a binding commitment because the intent of the parties not to be bound is clear on its face. 166 Mamaroneck Ave. Corp. v. 151 East Post Rd. Corp., 78 N.Y.2d 88, 91 (1991); Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co., 670 F. Supp. 491, 497-98 (S.D.N.Y. 1987). Thus, Palmer would only have a viable claim for personal jurisdiction over Lacavera if the meeting in New York substantially advanced

13

the parties' relationship or was essential to the formation of the employment contract and shareholders' agreement.

Courts have found personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1) where the negotiations that took place in New York were essential in furthering the ultimate agreement or relationship between the parties. See, e.g., <u>Liquid Carriers Corp. v. American Marine Corp.</u>, 375 F.2d 951, 956 (2d Cir. 1967) (jurisdiction exercised over Louisiana defendant based on three trips to New York for contract negotiations); <u>Round One Prod. v. Greg Page Enters. Inc.</u>, 566 F. Supp. 934, 937-38 (E.D.N.Y. 1982) (jurisdiction exercised over Kentucky defendants based on two dinner meetings in New York because those meetings were part of "a chain of business meetings" that "create[d] the likelihood of a more solid business relationship").

Personal jurisdiction has also been found where the negotiations in New York determined the fundamental substantive terms of the parties' agreement. See, e.g., <u>Firegreen Ltd. v. Claxton</u>, 160 A.D.2d 409, 411 (1st Dep't 1990) (jurisdiction exercised over California defendant for breach of contract claim where the contract was entered into in New York at a two-hour meeting at which the price and quantity of product to be delivered, the future relationship between the parties, the payment terms, the down payment, and the means of supply were negotiated); <u>Rates Tech. Inc. v. Diorio</u>, 626 F. Supp. 1295, 1298 (E.D.N.Y. 1986) (jurisdiction exercised over New Mexico defendants because a three- to four-hour meeting in New York "produced an agreement in principal with respect to the fundamental terms of the joint venture").

On the other hand, in <u>Painewebber, Inc. v. Westgate Group, Inc.</u>, 748 F. Supp. 115, 120 (S.D.N.Y. 1990), the court, applying a preponderance of the evidence standard, found personal jurisdiction lacking over a Texas defendant because the signing of a modification agreement in New York did not amount to purposeful availment of the New York forum. The defendant in <u>Painewebber</u> engaged the plaintiff's services through plaintiff's Dallas office, and the negotiation of the modification agreement was done completely outside of New York. The court held that "memorialization of a previously agreed-upon term" in New York is not sufficient to confer jurisdiction under § 302(a)(1). Similarly, in <u>Presidential Realty</u>, the New York Court of Appeals found no personal jurisdiction in a case where an agreement was signed in New York after a one-day meeting because the extent of the discussions at the meeting was not alleged, leaving "no proof of any contacts with this State other than the fact that the modification letter and the agreement were signed in New York." 44 N.Y.2d at 673-74. Personal jurisdiction was also lacking in <u>McKee Electric Co. Inc. v. Rauland-Borg Corp.</u>, 20 N.Y.2d 377

14

(1967), where the court found that the Illinois defendant's contacts with New York, which included negotiation of a distributorship agreement that was subsequently renewed multiple times in Chicago and a two-hour visit by a representative of defendant to New York plaintiff's place of business, were "infinitesimal" and not enough to find personal jurisdiction. Id. at 380-82.

Both Palmer and Lacavera agree that the letter of intent was fully negotiated prior to the signing in New York. As in Painewebber, Presidential Realty, and McKee Electric, there is no proof that the signing of the letter in New York had any significant connection with New York. Indeed, when asked why Palmer and Lacavera met in New York if the letter of intent was negotiated prior to the meeting, Palmer candidly stated, "I do not know the reason for coming to New York. I mean, I do not -- I just basically did what I was asked to do."

In Round One and Liquid Carriers, plaintiffs were New York entities, so the underlying agreements that were furthered by the New York meetings in those cases had stronger connections to the benefits and protections of New York law than does the present case, where neither Palmer nor Lacavera is a New York resident. Furthermore, in contrast to this case, the content of the meetings that took place in New York in Firegreen and Diorio was critical in determining the substantive terms of the parties' agreement.

Langer's testimony about his meetings with Lacavera in New York does not help Palmer establish § 302(a)(1) jurisdiction because those contacts had no connection with Lacavera's contacts with Palmer in New York as to a business transaction.

Palmer also alleges that jurisdiction over Lacavera should be imputed based on an agency relationship, with Globalive acting as Lacavera's agent in New York. See Retail Software Servs. Inc. v. Lashlee, 854 F.2d 18, 22 (2d Cir. 1988) ("[A] corporation can act as an agent for an individual for the purposes of § 302(a)(1).") In order to impute jurisdiction over Lacavera based on an agency relationship, Palmer would have to prove that Globalive, or some other entity, acted on behalf of Lacavera in New York. Palmer makes no allegations regarding Globalive's conduct in New York that could yield a basis for personal jurisdiction over Lacavera through an agency relationship. This argument is unavailing.

Finally, as further evidence that Palmer's claims do not arise from the New York meeting, Lacavera notes that the shareholders' agreement and employment contract were negotiated and entered into after the New York meeting. Given that the shareholders' agreement and employment contract did not exist at the time of Palmer's meeting in New York with Lacavera, that all

of the agreements and contracts were negotiated and entered into outside of New York, and that the letter of intent had been finalized before its signing in New York, the claims for breach of the shareholders' agreement and tortious interference with the employment contract do not arise from and are not substantially related to the New York meeting.

It cannot be said that the New York meeting "substantially advanced" or was "essential to" the formation of the later agreements, or that the meeting advanced the parties' relationship to "a more solid level." ICC Primex, 775 F. Supp. at 655. As with Painewebber and Presidential Realty, the signing of the letter of intent in New York was merely coincidental or fortuitous, not a purposeful availment sufficient to confer jurisdiction under § 302(a)(1).

### 2. Commission of a Tortious Act

Under § 302(a)(2) of the New York long-arm statute, jurisdiction is available over a defendant for a cause of action arising from the commission of a tortious act in New York. Lacavera must have been physically present in New York when he committed the alleged tortious act. Bensusan Rest. Corp. v. King, 126 F.3d 25, 28 (2d Cir. 1997); Feathers v. McLucas, 15 N.Y.2d 443, 460 (1965). The ultimate harm need not have occurred in New York. Feathers, 15 N.Y.2d at 463-64; Rolls-Royce Motors, Inc. v. Charles Schmitt & Co., 657 F. Supp. 1040, 1052-53 (S.D.N.Y. 1987). Even if Lacavera represented a corporation in relations with Palmer, such representation would not shield him from jurisdiction "if he acted improperly in representing them." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 470 (1988) (holding that the fiduciary shield doctrine is inapplicable under the long-arm statute).

Fraudulent misrepresentations made in New York from which a cause of action arises will suffice for personal jurisdiction under § 302(a)(2). See, e.g., Bialek v. Racal-Milgo, Inc., 545 F. Supp. 25, 35-36 (S.D.N.Y. 1982) (exercising jurisdiction under § 302(a)(2) over a fraudulent inducement of contract claim where purportedly fraudulent misrepresentations were made during two preliminary employment interviews conducted in New York, prior to the final interview and offer made in Florida); PI, Inc. v. Quality Prods., 907 F. Supp. 752, 762 (S.D.N.Y. 1995) (finding § 302(a)(2) jurisdiction over defendant for allegedly false representations made in New York regarding registration of securities); Gudaitis v. Adomonis, 643 F. Supp. 383, 385 (E.D.N.Y. 1986) (finding § 302(a)(2) jurisdiction where defendants visited New York on more than one occasion in furtherance of a scheme to fraudulently induce marriage).

16

Palmer testified that at the meeting in New York Lacavera told him that Palmer would have "an active role in the company" and that Globalive would need Palmer's "knowledge about the product, feedback, [and] development." Only Palmer's three fraud claims (fraudulent misappropriation of the Freefone trademark, fraudulent inducement of contract, and fraudulent inducement of trademark assignment) could arguably arise from Lacavera's statements in New York. As to these claims, Palmer alleges that Lacavera and others induced him to enter into the shareholders' agreement and assign the Freefone trademark to Globalive by falsely promising him that Globalive would invest substantial amounts of capital and resources in the Freefone product and that he would play a prominent role both in Freefone, Inc. and in further developing the Freefone product.

To prove personal jurisdiction over Lacavera for the fraud claims, Palmer must show that Lacavera's statements in New York gave rise to his claims. See Bialek, 545 F. Supp. at 35-36; Bernstein v. Kelso & Co., 231 A.D.2d 314, 325 (1st Dep't 1997) (finding § 302(a)(2) jurisdiction over Virginia defendants because they attended meetings in New York where the alleged fraud was planned and carried out); NCA Holding Corp. v. Ernestus, No. 97-1372, 1998 U.S. Dist. LEXIS 10298 (S.D.N.Y. July 6, 1998) (not finding § 302(a)(2) jurisdiction where fraudulent inducement to contract occurred before a meeting in New York where the fraud was discovered but no new misrepresentations were made).

Lacavera argues that Palmer's claims do not arise from events at the New York meeting because the letter of intent was non-binding and subsequent events, like the execution of the shareholders' agreement and the employment contract, departed from the transaction contemplated by the letter of intent. Palmer entered into the shareholders' agreement in Toronto on September 15, 2003, two months after the meeting with Lacavera in New York. Palmer transferred the Freefone trademark in May of 2004, eight months after Freefone, Inc. was incorporated in Canada and ten months after the meeting in New York regarding the letter of intent.

First, Lacavera's representations regarding Globalive's financing of Freefone, Inc. were not made in New York. According to the Amended Complaint, those representations were made in January of 2004, six months after Lacavera and Palmer met in New York.

Second, as discussed in the previous section, no new provisions of the letter of intent were negotiated at the New York meeting, and Lacavera did not make any new promises or representations there. Palmer testified that significant negotiations regarding the shareholders' agreement were conducted

17

outside of New York prior to its signing in Toronto. He stated, "We went back and forth, back and forth. There were additions and subtractions to it." Unlike the meeting in New York, these separate rounds of negotiations focused specifically on the shareholders' agreement that Palmer alleges he was fraudulently induced to enter into. Lacavera's statements in New York are too far removed from the negotiations over the shareholders' agreement to support personal jurisdiction over him in New York for fraudulent inducement to contract. Palmer's claim for fraudulent inducement to contract against Lacavera does not arise from Lacavera's statements made in New York two months earlier about Palmer's role in Freefone, Inc. and in developing the Freefone product.

Similarly, Palmer's claims of fraudulent misappropriation of the Freefone trademark and fraudulent inducement of trademark assignment do not arise from Lacavera's statements in New York. Palmer made the trademark assignment outside of New York ten months after the New York meeting had taken place and eight months after the shareholders' agreement was entered into in Toronto. Lacavera's statements at the meeting in New York are too remote from Palmer's eventual transfer of the trademark months later to support the exercise of personal jurisdiction over Lacavera in New York for fraudulent misappropriation of trademark and fraudulent inducement of trademark assignment.

Palmer has not demonstrated by a fair preponderance of the credible evidence that this court has personal jurisdiction over Lacavera under N.Y. C.P.L.R. § 302.

CONCLUSION

For the foregoing reasons, the motion to dismiss claims one and two for lack of subject matter jurisdiction is denied, and Lacavera's motion to dismiss all claims against him for lack of personal jurisdiction is granted.

SO ORDERED.

Dated:   New York, New York
         August 1, 2008

                    S/_____
                         MIRIAM GOLDMAN CEDARBAUM
                         United States District Judge